**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNETTE L. STEINHARDT, <br><br> Plaintiff, <br><br> v. <br><br> BERNARDSVILLE POLICE DEPARTMENT, et al., <br><br> Defendants. | Civil Action No. 17-2169 (MAS) (LHG) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Bernardsville Police Department, Kevin Valentine ("Valentine"), Brian Kelly ("Kelly"), Paul Kelley ("Kelley"), and William Ussery's ("Ussery") (the "Individual Responding Defendants,"[1] and collectively with the Bernardsville Police Department, "Responding Defendants") Motion to Dismiss Plaintiff's Third Amended Complaint. (ECF No. 71.) Defendants Brian Hoey ("Hoey"), Douglas Brownlie ("Brownlie"), and Thomas L. White ("White") (collectively, "SCPO Defendants"[2] and together with the Responding Defendants, "Defendants") did not respond to Plaintiff's Third Amended Complaint. Plaintiff Annette L. Steinhardt ("Plaintiff") opposed. (ECF No. 72.) The Court has carefully considered the parties' submissions and decides this matter without oral argument

---

[1] The Individual Responding Defendants are current or former law enforcement personnel in the Bernardsville Police Department. (*See* Defs.' Mot. to Dismiss Third Am. Compl. 2-3, ECF No. 71.) Their specific job titles, however, are unclear.

[2] The SCPO Defendants are all employees of the Somerset County Prosecutor's Office. (Defs.' Motion to Dismiss 1, ECF No. 8).

pursuant to Local Civil Rule 78.1. For the reasons set forth below, Responding Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint is granted.

I. **BACKGROUND**[3]

This matter arises out of a series of events occurring between March 2015 and February 2017.[4] (Third Am. Compl. 4, ECF No. 57.)[5] Plaintiff asserts a variety of claims against Defendants under 42 U.S.C. § 1983. (*Id.* at 4.)

In late 2014, Plaintiff engaged a contractor to replace an oil burner in her outdoor shed. (Second Am. Compl. 15.) Around this time, Plaintiff began to live part-time with her ailing mother to provide care for her. (Third Am. Compl. 5.) In or about February 2015, Plaintiff returned to her home to find that her cabinets, oven, and dishwasher were missing. (*Id.*) Plaintiff further discovered that jewelry and assorted gifts from family and friends had also been removed. (*Id.*) The contractor admitted to Plaintiff that he had taken at least some of the items and promised to

---

[3] For the purposes of this motion to dismiss, the Court accepts as true and summarizes the facts alleged in the Third Amended Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d, 224, 233 (3d Cir. 2008) (citation omitted) (stating that on a Rule 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief").

[4] The Plaintiff's Second Amended Complaint alleged facts dating as far back as 1996. (Second Am. Compl. 13, ECF No. 33.) This Court previously dismissed all claims prior to March 29, 2015 as time-barred. (Order, ECF No. 54.) In her Third Amended Complaint, Plaintiff limited the range of her claims to the temporal scope prescribed by this Court's Order. (*See generally* Third Am. Compl.) As a general rule, an amended complaint supersedes an earlier pleading, effectively rendering it a "nullity." *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017); *see Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). The Court, accordingly, does not consider any legal arguments advanced in Plaintiff's Second Amended Complaint. The Court briefly references the Second Amended Complaint to provide context for facts alleged in Plaintiff's Third Amended Complaint.

[5] Citations to the Third Amended Complaint refer to the page numbers from the ECF timestamp.

return them and vacate her home. (*Id.*) However, from February through July of 2015, the contractor continued to enter Plaintiff's home with "strange people" despite Plaintiff's repeated requests that he cease doing so. (*Id.*) The contractor also never returned the stolen items. (*Id.*) Plaintiff avers that she never reached out to the Bernardsville Police Department for assistance during this period because she had a "horrible history with them and [did] not feel safe in their presence." (*Id.*)

Towards the end of May 2015, Plaintiff received word of severe flooding in Bernardsville and returned home to find her "school books, furniture, [and] electronics" in disarray. (*Id.*) Plaintiff subsequently contacted her insurance company to file a claim. (*Id.* at 6.) The insurance company informed Plaintiff that a police report was necessary in order to proceed with the claim. (*Id.*) The Bernardsville Police Department refused to provide the insurance company with a police report. (*Id.*)

On or about June 9, 2015, Plaintiff met with Officer Steven Seiple ("Seiple") at the Bernardsville Police Department. (*Id.*) Seiple drafted a police report but refused to give Plaintiff a copy. (*Id.*) This report was also signed by Officer John Remian ("Remian"). (*Id.*) Seiple instructed Plaintiff not to call him again because he would not be offering her any assistance. (*Id.*) Later that month, Plaintiff was able to obtain a copy of the police report from Bernardsville Borough Attorney John Pidgeon ("Pidgeon"). (*Id.*) The report indicated that a valid contract existed between Plaintiff's mother and "the contractor" and further stated that Plaintiff was aware of the contract's

existence.⁶ (*Id.*) When Plaintiff requested a copy of the contract from the Bernardsville Police Department, Valentine first stated that the contract could not be turned over but later executed a sworn statement averring that no contract had ever existed.⁷ (*Id.*)

At some point between March and October 2015, Plaintiff filed an official complaint with the "NJ Department of Corruptions" (the "Official Complaint"). (*Id.*) Although Plaintiff provides an identification number for the Official Complaint—200100258—it is not clear that any such named agency exists or what agency Plaintiff is attempting to reference. (*Id.*)

In response to the Official Complaint, Plaintiff received correspondence from Hoey—on which Valentine was carbon copied—stating that a valid contract "took place at [Plaintiff's] residence." (*Id.*) Later, Hoey executed a sworn statement that "he used software to gain [unauthorized] access to a database." (*Id.*) In doing so, Hoey used the information he obtained for "non-official police business," purposely endangering Plaintiff's "well-being and safety" and causing Plaintiff emotional harm. (*Id.*)⁸

---

⁶ Despite averring that "[c]ontract law is very clear on this subject," Plaintiff provides scant detail about the nature of this contract or the parties bound by it. As a preliminary matter, the Court is uncertain whether the contractor referenced in regards to this contract is the same contractor with whom Plaintiff had a dispute over the installation of an oil burner. The potential relationship, causal or otherwise, between the claims Plaintiff made in the police report and the existence of this contract is also unclear. If the contract relates to the installation of an oil burner in Plaintiff's shed, no explanation has been offered as to why Plaintiff's mother would be a party to this contract but Plaintiff would not. It is also not clear if the police report Plaintiff obtained from Pidgeon is the same one that was signed by Seiple and Remian.

⁷ Plaintiff claims that Kevin Valentine told her the contract "was used in an investigation" and therefore could not be released to her. (Third Am. Compl. 5.) It is unclear what investigation Valentine would have been referencing.

⁸ Plaintiff offers no specifics as to which database is alleged to have been accessed, who would otherwise be able to legally access it, the type of information that was obtained, or what actions were taken by Hoey.

4

Some time after Plaintiff filed the Official Complaint, she corresponded with Brownlie regarding the contract. (*Id.* at 7.) Brownlie informed Plaintiff that despite her requests, he would not request a copy of the contract from the Bernardsville Police Department because he was satisfied with its contention that a contract existed and that Plaintiff's property had not been damaged. (*Id.*) White also denied Plaintiff's request for a copy of the contract. (*Id.*)

At some point during the relevant time period, Paul Kelley and Brian Kelly "refused to assist in official capacity and began stalking [Plaintiff]." (*Id.*) Plaintiff "provided documentation to Paul Kelley regarding: [c]riminal [t]respass, [m]alicious [m]ischief, [a]nd [g]rand larceny" during an unspecified encounter. (*Id.*)

This case has a long procedural history before this Court. The Court previously dismissed Plaintiff's Amended Complaint and Plaintiff's Second Amended Complaint. (ECF Nos. 31, 54.) On November 28, 2018, Plaintiff filed a Third Amended Complaint seeking $51,000,000 in compensatory and punitive damages. (ECF No. 57.)

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2)[9] requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A motion to dismiss for failure to state a claim will be granted if the plaintiff is "unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Twombly*, 355 U.S. at 570). Defendant bears the burden to show that no plausible claim has been asserted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

---

[9] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

5

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Malleus*, 641 F.3d at 563. "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

It is well-settled that pro se pleadings are to be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers'"). Rule 8(e) requires that pleadings "must be construed so as to do justice." A court, accordingly, will only dismiss a pro se complaint for failure to state a claim if the court finds "beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Id.* (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). Pro se litigants, nevertheless, must "still allege sufficient facts in their complaint[] to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *see also Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). The Court, accordingly, will not "read into pro se submissions claims that are not consistent with the pro se litigant's allegations." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006).

## III. DISCUSSION

### A. Section 1983 Claims

Section 1983 provides, in relevant part, that "every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of rights, privileges, or immunities secured by the Constitution and laws" shall be civilly liable to the injured party. 42 U.S.C. § 1983.

Municipalities and other local government bodies are "included among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). These entities, however, will not be held liable unless the "execution of a government's policy or custom . . . inflicts" a constitutional injury. *Id.* at 694. Local governmental entities cannot be sued under a *respondeat superior* theory of liability for merely employing a tortfeasor. *Id.*

#### 1. Bernardsville Police Department

Here, Plaintiff seeks to hold the Bernardsville Police Department liable for the actions of its employees. Despite liberally construing the allegations of the Third Amended Complaint, Plaintiff fails to plead that she was injured as the result of an official policy or custom of the Bernardsville Police Department. Plaintiff, therefore, has failed to state a claim as to the Bernardsville Police Department. The Court, accordingly, dismisses this claim.

#### 2. The Individual Responding Defendants

Plaintiff also brings claims against Valentine, Kelly, Kelley, and Ussery in their individual and official capacities. Subsequent to filing the Third Amended Complaint, Plaintiff filed correspondence requesting the Court enter items into evidence. (ECF Nos. 62, 67.) On a motion to dismiss, a district court generally "may not consider matters extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). The

7

Court, accordingly, will not consider allegations or claims Plaintiff raised in this supplemental correspondence.

The Federal Rules of Civil Procedure do not require a Plaintiff to "set forth an intricately detailed description" of each claim, however the complaint must "give [each] defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n.3 (1984) (citations and internal quotation marks omitted). Much like the Second Amended Complaint, the Third Amended Complaint is packed with rambling and confusing allegations. The timeline of the Complaint's narrative jumps around without warning or purpose and is replete with non-sequiturs and perplexing tangents. Despite its best efforts, the Court is unable to discern a plausible claim upon which relief could be granted. The Court, therefore, dismisses Plaintiff's claims against the Individual Responding Defendants. Plaintiff's Third Amended Complaint also fails to state a claim as to the SCPO Defendants.[10]

### B. Section 1988 Claim

Plaintiff avers that "[t]his action is for money damages brought pursuant to 42 U.S.C. [§] 1983 *and [§] 1988*. (Third Am. Compl. 3) (emphasis added). However, this passing mention of § 1988 is the only reference made in the entire pleading.

---

[10] "[A] court dismissing claims against moving defendants may *sua sponte* dismiss claims against non-moving defendants." *Eun Ju Song v. Bank of Am., N.A.*, No. 14-3204, 2015 WL 248436, at *3 (D.N.J. Jan. 20, 2015). When a court's reasoning "applies broadly to all [d]efendants," a court may grant dismissal even as to defendants who did not join in the operative motion. *Roloff v. Christie*, No. 15-1432, 2016 WL 164612, at *1 n.1 (D.N.J. Jan. 13, 2016); *see also Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) ("A court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related"). Here, the SCPO Defendants are similarly situated to the Responding Defendants and Plaintiff has alleged no unique facts or circumstances regarding the conduct of the SCPO Defendants that give rise to a colorable claim for relief. The Court, accordingly, dismisses Plaintiff's claims against the SCPO Defendants.

Section 1988 permits, *inter alia*, a court to award the prevailing party in a § 1983 action reasonable attorney's fees. 42 U.S.C. § 1988. Regardless of whether a plaintiff successfully states a § 1983 claim, a pro se litigant cannot recover attorney's fees under § 1988. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991). Because the Plaintiff is pro se, the Court dismisses Plaintiff's § 1988 with prejudice.

IV. **CONCLUSION**

Based on the foregoing, and for other good cause shown, Responding Defendants' Motion to Dismiss is granted. The Court, however, finds that Plaintiff appeared to make a concerted effort to follow the directions the Court articulated in its October 31, 2018 Order. For this reason, the Court will permit Plaintiff one final opportunity to amend her complaint to comply with the Federal Rules of Civil Procedure, the District Court of New Jersey's Local Civil Rules, and the Court's specific filing instructions.

The Court will issue an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: **November 19, 2019**