**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANNETTE L. STEINHARDT,<br><br>Plaintiff,<br><br>v.<br><br>BERNARDSVILLE POLICE DEPARTMENT, *et al.*,<br><br>Defendants. | Civil Action No. 17-2169 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Bernardsville Police Department, Kevin Valentine, Brian Kelly, Paul Kelley, William Ussery, and Steven Seipel's (collectively, the "Individual Responding Defendants" and, with the Bernardsville Police Department, "Responding Defendants") Motion to Dismiss the Fourth Amended Complaint of pro se Plaintiff Annette L. Steinhardt ("Plaintiff"). (ECF No. 80.) Plaintiff opposed the Motion. (ECF No. 81.) Defendants Somerset County Prosecutor's Office, Brian Hoey, Douglas Brownlie, and Thomas L. White (collectively, "SCPO Defendants" and, with the Responding Defendants, "Defendants") did not respond to Plaintiff's Fourth Amended Complaint.[1] The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Responding Defendants' Motion to Dismiss is granted. Plaintiff's Fourth Amended Complaint is dismissed with prejudice.

---

[1] The Court notes that the SCPO Defendants similarly failed to respond to Plaintiff's Third Amended Complaint.

I.  **BACKGROUND**[2]

    A.  **Factual Background**[3]

This matter arises out of a series of events occurring between March 2015 and February 2017. (FAC 5, ECF No. 75.)[4] Plaintiff alleges that Defendants "exhibited actions and/or inactions that raise[] issues with Federal and State [l]aw and [v]iolations of Constitutional [r]ights." (*Id.*) When analyzing Plaintiff's Third Amended Complaint, the Court noted that "[t]he timeline of the Complaint's narrative jump[ed] around without warning or purpose[,] and [was] replete with non-sequiturs and perplexing tangents." (Mem. Op. 8, ECF No. 73.) Plaintiff's Fourth Amended Complaint is no different. The Court, therefore, attempts to recount Plaintiff's allegations in chronological order, to the best of its ability.

---

[2] For the purposes of a motion to dismiss, the Court accepts as true and summarizes the factual allegations of the Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[3] The Court notes that Plaintiff's Opposition Brief contains a litany of factual allegations and details that are not present in the Fourth Amended Complaint (the "FAC"). (*Compare* Pl.'s Opp'n Br. *with* FAC.) Although the Court is cognizant of Plaintiff's pro se status, the Third Circuit has held that "[pro se litigants] cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted). "It is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (quoting *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). This rule applies equally to pro se plaintiffs. *See Tice v. Winslow Twp. Police*, No. 13-6894, 2014 WL 3446611, at *2 (D.N.J. July 11, 2014) ("A plaintiff, even one proceeding pro se, cannot amend his pleading through a brief in opposition to dismissal."). The Court has been exceptionally patient with Plaintiff and provided her numerous opportunities to amend her Complaint. To permit Plaintiff to make new factual assertions in her opposition brief would permit her to flout the same procedural rules that apply to all other litigants. The Court, therefore, does not consider any new factual allegations raised in Plaintiff's Opposition Brief. *See, e.g.*, *Strategic Envtl. Partners, LLC v. Bucco*, 184 F. Supp. 3d 108, 128 n.17 (D.N.J. 2016) (declining to consider plaintiffs' allegation that was raised for the first time in an opposition brief).

[4] As a general rule, an amended complaint supersedes an earlier pleading, effectively rendering it a "nullity." *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) (citation omitted); *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). The Court, accordingly, does not consider any factual assertions Plaintiff made in her previous pleadings.

On or around June 2, 2015, Plaintiff filed an insurance claim with Allstate Insurance "for property damages, theft[,] and assets." (FAC 6.)[5] A representative from Allstate Insurance directed Plaintiff to request a police report relating to the incident from the Bernardsville Police Department. (*Id.*) Plaintiff subsequently visited the Bernardsville Police Department "to obtain a [p]olice [r]eport for Allstate Insurance," and showed Steven Seiple photographs of the damaged property. (*Id.*) Plaintiff avers, however, that Seiple did not personally review the evidence of the damage firsthand. (*Id.*) Plaintiff further asserts that Seiple contacted Allstate Insurance to inform them Plaintiff "had abandoned [her] home and property" despite Plaintiff proving otherwise. (*Id.*) Seiple twice informed Plaintiff that no police report would be provided, and suggested she instead file a complaint with the Bernardsville Municipal Court. (*Id.* at 6–7.)[6]

After failing to obtain the police report, Plaintiff reached out to the Somerset County Police Department for assistance. (*Id.* at 7.) Detectives Paul Kelley and Brian Kelly visited Plaintiff's residence "and noticed all the furniture, electronics[,] and other home items [were] thrown about in the back yard." (*Id.*) They asked Plaintiff for photos of the damaged and stolen property and jewelry, which Plaintiff provided. (*Id.* at 8.) When Plaintiff attempted to follow-up with Detective Brian Kelly, "no other response or support was given by him." (*Id.*) Detective Paul Kelley similarly stopped responding to Plaintiff's phone calls and refused "to go any further with the [p]olice [r]eport and [i]nvestigation or answer any of [] Plaintiff's questions." (*Id.*) Plaintiff avers that

---

[5] Plaintiff provides no factual background regarding the alleged theft and property damage. (*See generally* FAC.)

[6] Confusingly, halfway down the same page Plaintiff avers that "Steve Seiple['s] actions/inactions resulted in [i]nsurance [f]raud by refusing to provide a police report to the [i]nsurance [c]ompany, by making false statements[,] and *producing [an] erroneous police report to Allstate Insurance* . . . ." (FAC 7 (emphasis added).) Similar assertions appear on page 9 of the FAC wherein Plaintiff avers "Steven Seiple and Paul Kelley [wrote] out [p]olice [r]eports . . . ." (*Id.* at 9.)

3

"[t]he Bernardsville Police Department . . . conspired with each other for the sole purpose [of] caus[ing] Plaintiff harm. . . . under the color of law." (*Id.*) Plaintiff notes that she "brought this issue up to the Bernardsville [Borough] Council and Mayor via email and alerted them that they were refusing a police report or to take any action." (*Id.*) Neither the Mayor nor the Council took any action. (*Id.*) Plaintiff avers that, in total, she suffered a loss of $384,000 "due to stolen, damaged property[,] and was unable to replace or repair damages without assistance from her homeowner's insurance policy." (*Id.*)[7]

Despite her previous assertions that Steven Seiple failed to provide her with a police report, Plaintiff next avers that "Steven Seiple and Paul Kelley [wrote] out [p]olice [r]eports that state Plaintiff [has] a [v]alid [c]ontract[,]" which was entered into evidence and contains Plaintiff's name and signature. (*Id.* at 9.)[8] Plaintiff received letter correspondence from Chief Kevin Valentine stating that "by law he is not allowed to provide a copy of the legal, binding contract." (*Id.*) Plaintiff contends she subsequently filed a complaint with the New Jersey Government Records Council who "vote[d] that the contract must be handed over to [] Plaintiff." (*Id.*) Chief Valentine sent letter correspondence to the Government Records Council stating that while "no contract is on file in the [Bernardsville] Police Department, . . . a proposal . . . signed by [] Plaintiff's mother exists." (*Id.*) Plaintiff appears to assert that the contract or proposal was fraudulent. (*Id.*) Plaintiff further claims that the "Bernardsville Police Department tried to have []

---

[7] Despite this assertion, Allstate Insurance has never been a named party in any of Plaintiff's five complaints. (*See generally* ECF Nos. 1, 16, 33, 57, 75.)

[8] Plaintiff provides scant detail about the nature of this contract and the parties allegedly bound by it. Based on Plaintiff's assertion that the "Bernardsville Police Department has claimed they have investigated '[c]onstruction [w]orkers' for stealing property on a job site," it appears that the alleged contract may relate to a construction project that occurred at Plaintiff's residence. (*See* FAC 9.)

4

Plaintiff forced into a contract against her will for the sole purpose to cause harm[] [and] un[due] duress." (*Id.* at 10.)

On or about September 9, 2015, Detectives Paul Kelley and Brian Kelly recorded a meeting they had with Plaintiff wherein they "interrogate[d] the Plaintiff on subjects that have nothing to do with property loss and harm." (*Id.* at 10.) Instead, they asked Plaintiff questions about her background, people she knows, and whether any complaints had been filed against the Bernardsville Police Department. (*Id.*)

On or about October 2, 2015, Plaintiff received letter correspondence from Captain Brian Hoey addressing a complaint Plaintiff had filed with the "NJ Department of Corruptions" (the "Official Complaint"). (*Id.*) Although Plaintiff provides an identification number for the Official Complaint—200100258—it is not clear that any such named agency exists or what agency Plaintiff is attempting to reference. (*Id.*) According to Plaintiff, the Official Complaint "is a sealed, protected witness statement of a sexual assault of a minor that the Bernardsville Police Department help[ed] cover up by shredding the evidence [to ensure] the assailant would not be prosecuted." (*Id.*)[9] Plaintiff filed a request pursuant to the New Jersey Open Records Act ("OPRA")[10] seeking information relating to the Official Complaint, but her request was denied. (*Id.* at 11.) Plaintiff alleges, however, that pursuant to her OPRA request, she learned that Brian Hoey "admit[ted] to

---

[9] While the nature of these allegations is very concerning to the Court, the Court is unable to determine exactly what Plaintiff is alleging occurred. It appears that the Official Complaint Plaintiff filed with the "NJ Department of Corruptions" relates to the alleged sexual assault of a minor. (FAC 10.) Plaintiff avers that she filed the Official Complaint "years after the sexual assault occurred." (*Id.*) In the next sentence, however, Plaintiff states that "Plaintiff was assaulted and battered, and the Bernardsville Police Department shredded the evidence so the assault would not go to trial in Somerville, [New Jersey]." (*Id.*) Plaintiff then claims, however, that she "was physically sick over what transpired years ago *associated with* [*a*] *fail*[*ure*] *to provide assistance and support to a minor that was sexually assaulted*." (*Id.* (emphasis added).)

[10] N.J. Stat. Ann. §§ 47:1A-1, *et seq*.

5

using software to gain access to the New Jersey Department of Corruptions data[base] to get information" on the Official Complaint. (*Id.*)[11] Douglas Brownlie also "reached out to [] Plaintiff" regarding her Official Complaint. (*Id.* at 12.) Plaintiff contends that "[b]y [] writing [to] the Plaintiff, [Brownlie] was harassing the Plaintiff [by] both being unwarranted and harmful." (*Id.*)

The remaining allegations of the FAC generally do not reference any specific dates or times, and it is unclear to the Court exactly where in the narrative timeline of the FAC Plaintiff is alleging these incidents occurred. These allegations include: (1) that the Responding Defendants and the SCPO Defendants engaged in multiple conspiracies to harm Plaintiff (*id.* at 13); (2) that Defendants "prevented the Plaintiff from addressing [her] property rights in a court of law" (*id.*); (3) that Defendants "entered falsified police reports into a court of law with the sole purpose [of] prevent[ing] the Plaintiff from going to trial in an attempt to get [her] property restored, returned[,] and [to] have the perpetrator stand trial in State Court in Somerville, [New Jersey]" (*id.*)[12]; (4) that Plaintiff was the victim of "selective enforcement" because "the perpetrator" received favorable treatment from the Bernardsville Police Department (*id.* at 14, 17); (5) that "[m]onths [went] by and [the] perpetrator was still in [Plaintiff's] home and jewelry in [the] bathroom [] was discovered stolen, along with various other items" (*id.* at 14); (6) that, after Plaintiff received a telephone call from a patrolman who stated "that the perpetrator wanted his equipment [back]," and after Plaintiff placed the perpetrator's equipment outside of her home and informed Steven Seiple that the items were ready to be picked up, Plaintiff was charged with "an indictable offense" (*id.* at 15)[13]; (7) that

---

[11] Plaintiff offers no specifics as to which database is alleged to have been accessed, who would otherwise be able to legally access it, the type of information that was obtained, or what actions were taken by Hoey. (*See generally* FAC.)

[12] It is entirely unclear to the Court to whom Plaintiff is referring to as "the perpetrator."

[13] The FAC provides no further detail about the nature of this alleged offense. (*See generally* FAC.)

Plaintiff attended a hearing relating to this offense, but (i) "no record of this hearing can be found," and (ii) the "court destroyed court records and all evidence of a trial" (*id.*); and finally, (8) that Plaintiff's due process rights were violated by Defendants because, *inter alia*, they (i) failed to "collect evidence and preserve evidence," (ii) failed "to document facts via official police reports[,]" and (iii) "created fraudulent reports to harm the Plaintiff" (*id.* at 16).

### B. Procedural Background

This case has a long procedural history before this Court. The Court previously dismissed Plaintiff's Amended, Second Amended, and Third Amended Complaints. (ECF Nos. 32, 54, 74.) Plaintiff's Third Amended Complaint was an action for "money damages brought pursuant to 42 U.S.C. § 1983 and [§] 1988." (Third Am. Compl. *3, ECF No. 57.) The Court dismissed Plaintiff's § 1988 claims with prejudice, dismissed her Section 1983 claims without prejudice, and permitted "Plaintiff one final opportunity to amend her complaint to comply with the Federal Rules of Civil Procedure, the District Court of New Jersey's Local Civil Rules, and the Court's specific filing instructions." (Nov. 19, 2019 Order 2, ECF No. 74.)

On December 16, 2019, Plaintiff filed a Fourth Amended Complaint once again seeking $51,000,000 in compensatory and punitive damages. (*See generally* FAC.) Instead of repleading her Section 1983 claims to address the deficiencies the Court had identified, Plaintiff added new parties—Steven Seiple and the Somerset County Prosecutor's Office—and alleged eight counts against Defendants: Count One, for negligence and violations of 42 U.S.C. § 1983 ("Section 1983") (*id.* 6–7); Count Two, for negligence, violations of Section 1983, violations of 42 U.S.C. § 1985 ("Section 1985"), and insurance fraud (*id.* 7–8); Count Three, for contract fraud (*id.* 9–10); Count Four, for violations of the Fourth Amendment, the Ninth Amendment, and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, (*id.* 10–12); Count Five, for civil conspiracy

7

and violations of Section 1985 (*id.* 12–13); Count Six, for violations of the Fifth Amendment (*id.* 13–14); Count Seven, for violations of the Fifth, Sixth, and Eighth Amendments, and civil conspiracy (*id.* 14–16); and Count Eight, for violations of Section 1983 and the Fourteenth Amendment (*id.* 16–18).

## II.    LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "[M]ere restatements of the elements of [a] claim [ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The

defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

It is well-settled that pro se pleadings are to be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers'"). Rule 8(e) requires that pleadings "must be construed so as to do justice." Fed. R. Civ. P. 8(e). A court, accordingly, will only dismiss a pro se complaint for failure to state a claim if the court finds "beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Estelle*, 429 U.S. 106 (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se litigants, nevertheless, "still must allege sufficient facts in their complaint[] to support a claim." *Mala*, 704 F.3d at 245 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)). The Court, accordingly, will not "read into pro se submissions claims that are not consistent with the pro se litigant's allegations." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citation omitted).

### III.   DISCUSSION

#### A.   Plaintiff Fails to State a Claim Arising Under Federal Law

Plaintiff invokes this Court's federal question jurisdiction and brings a litany of claims arising under federal statutory or Constitutional law. (*See generally* FAC.) In total, Plaintiff alleges violations of: (1) Section 1983; (2) Section 1985; (3) the CFAA; and (4) the Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments. (*Id.*) The Court addresses each claim in turn.

##### 1.   Plaintiff's Section 1983 Claims

Section 1983 provides, in relevant part, that "[e]very person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected,

9

any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" shall be civilly liable to the injured party. 42 U.S.C. § 1983. Municipalities and other local government bodies are "included among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). These entities, however, will not be held liable unless the "execution of a government's policy or custom . . . inflicts" a constitutional injury. *Id.* at 694. Furthermore, local governmental entities cannot be sued under a *respondeat superior* theory of liability for merely employing a tortfeasor. *Id.* at 691.

Here, Plaintiff seeks to hold the Bernardsville Police Department liable for the actions of its employees. Despite liberally construing the allegations of the Fourth Amended Complaint, Plaintiff fails to plead that she was injured as the result of an official policy or custom of the Bernardsville Police Department. Plaintiff, therefore, has failed to state a Section 1983 claim against the Bernardsville Police Department.

Plaintiff also brings claims against the Individual Responding Defendants in their individual and official capacities. To state a claim against an individual under § 1983, a plaintiff must adequately allege: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citing *Kost v. Kozakiewicz,* 1 F.3d 176, 184 (3d Cir. 1993)). The Federal Rules of Civil Procedure do not require a Plaintiff to "set forth an intricately detailed description" of each claim; the complaint must "give [each] defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984) (citations and internal quotation marks omitted). A Plaintiff, therefore, must allege

"sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)

Much like the Second and Third Amended Complaints, the Fourth Amended Complaint is packed with vague, rambling, and confusing allegations. Despite its best efforts, the Court is unable to discern a plausible claim upon which relief could be granted. Additionally, as discussed in Section III.A.4, *infra*, Plaintiff has failed to plausibly allege the deprivation of a right, privilege, or immunity secured by the Constitution. Plaintiff, therefore, has failed to state a Section 1983 claim against the Individual Responding Defendants.

### 2. Plaintiff's Section 1985 Claim

"Section 1985(3) permits an action to be brought by one injured by a conspiracy formed for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotation marks and citation omitted). Section 1985(3), however, "was not intended to provide a federal remedy for all tortious, conspiratorial interferences with the rights of others, or to be a general federal tort law." *Id.* at 135 (internal quotations omitted). Indeed, "because § 1985(3) requires the intent to deprive [one] of *equal* protection, or *equal* privileges and immunities, a claimant must allege some racial, *or perhaps otherwise class-based,* invidiously discriminatory animus behind the conspirators' action in order to state a claim." *Id.* (internal quotations omitted) (emphasis in original).

As an initial matter, Plaintiff fails to plead that she is a member of a protected class or plausibly allege that she is the victim of class-based discriminatory animus. Additionally, although Plaintiff alleges she is the victim of multiple conspiracies, these allegations are incredibly vague and fail to give Defendants fair notice of the grounds upon which her claims rest. For example,

Plaintiff alleges, without further detail, that "[t]he Bernardsville Police Department . . . conspired with each other for the sole purpose to cause Plaintiff harm." (FAC 8.) In Counts Five, Six, and Seven, Plaintiff alleges that Defendants conspired amongst themselves to injure Plaintiff by providing multiple false police reports and statements "to [g]overnment officials with the [s]tate of New Jersey," and that Defendants conspired with an unnamed and unidentified "perpetrator." (*Id.* at 13–15.) Despite its best efforts, the Court is unable to discern a plausible claim upon which relief could be granted. Plaintiff, therefore, has failed to state a Section 1985 claim.

### 3. Plaintiff's CFAA Claim

The CFAA provides, in relevant part, that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). The CFAA enumerates "various provisions prohibiting the intentional, unauthorized access of protected computers." *Christie v. Nat'l Inst. for Newman Studies*, No. 16-6572, 2019 WL 1916204, at *4 (D.N.J. Apr. 30, 2019), *appeal dismissed sub nom*. *Christie v. Nat'l Institute for Newman*, No. 19-2251, 2019 WL 6358762 (3d Cir. Aug. 21, 2019) (citing 18 U.S.C. §§ 1030(a)(1)–(7)). Regardless of which subsection of the CFAA is invoked, "the essential element of all § 1030(a) claims is the 'unauthorized' access of information in connection with computers." *Id.* (citing *Collegesource, Inc. v. Academyone, Inc.*, 597 Fed. App'x. 116, 129 (3d. Cir. 2015) ("Common to all . . . claims under the CFAA is the requirement of proof that the defendant accessed information 'without authorization' or 'exceed[ed] authorized access.'")) (alterations in original).

Here, Plaintiff alleges that Brian Hoey "admit[ted] to using software to gain access to the New Jersey Department of Corruptions data[base] to get information" on the Official Complaint. (FAC 11.) As discussed above, Plaintiff offers no specifics as to which database is alleged to have

been accessed, who would otherwise be able to legally access it, the type of information that was obtained, or what actions were taken by Hoey. Plaintiff's unsupported assertion that one of the SCPO Defendants "provide[d] a sealed witness statement and ma[de] it public knowledge" is similarly insufficient to state a claim. (*Id.*) Despite its best efforts, the Court is unable to discern a plausible claim upon which relief could be granted. Plaintiff, therefore, has failed to state a CFAA claim.

### 4. Plaintiff's Constitutional Claims

Plaintiff brings various claims purporting to arise under the Constitution. Plaintiff seeks to invoke (1) the Fourth Amendment's "[p]rotections from unreasonable searches and seizures" (FAC 10); (2) the Fifth Amendment's "[p]rotection of rights to property without due process of law" (*id.* at 13); (3) Sixth Amendment's guarantee of "[r]ights of [a]ccused [p]ersons in [c]riminal [c]ases" (*id.* at 14); (4) the Eight Amendment's protection against "cruel and unusual[] punishment" (*id.*); and (5) the Fourteenth Amendment's protection against the deprivation of due process (*id.* at 16). Plaintiff also seeks to invoke the Ninth Amendment[14] but provides no context or details beyond listing it in the FAC. (*Id*. at 10.)

Like Plaintiff's other federal claims, Plaintiff's constitutional claims fail because they are vague, unsupported, and fail to give Defendants fair notice of the grounds upon which the claims purport to rest. Despite construing the factual allegations of the FAC in the light most favorable to Plaintiff, the Court cannot discern a plausible cause of action. Moreover, although the Court must construe the FAC in the light most favorable to Plaintiff, it "cannot read into pro se submissions

---

[14] The Ninth Amendment provides, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.

claims that are not 'consistent' with the pro se litigant's allegations." *Triestman*, 470 F.3d at 477. Plaintiff's constitutional claims, accordingly, fail.

### B. Plaintiff's Federal Claims Against the SCPO Defendants

"[A] court dismissing claims against moving defendants may *sua sponte* dismiss claims against non-moving defendants." *Eun Ju Song v. Bank of Am., N.A.*, No. 14-3204, 2015 WL 248436, at *3 (D.N.J. Jan. 20, 2015). When a court's reasoning "applies broadly to all [d]efendants," a court may grant dismissal even as to defendants who did not join in the operative motion. *Roloff v. Christie*, No. 15-1432, 2016 WL 164612, at *1 n.1 (D.N.J. Jan. 13, 2016); *see also Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) ("A court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related"). Here, the SCPO Defendants are similarly situated to the Responding Defendants, Plaintiff's allegations are similarly vague, and Plaintiff has alleged no unique facts or circumstances regarding the conduct of the SCPO Defendants that give rise to a colorable claim for relief. The Court, accordingly, also dismisses Plaintiff's federal claims against the SCPO Defendants. *See, e.g.*, *Eun Ju Song*, No. 14-3204, 2015 WL 248436, at *3 (dismissing claims against non-moving defendants with prejudice).

### C. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State and Common Law Claims[15]

In addition to her federal claims, Plaintiff also asserts claims for negligence, insurance fraud, contract fraud, and civil conspiracy. (*See generally* FAC.) Because the Court finds that Plaintiff has failed to state a claim for any violation of federal or Constitutional law, the Court declines to exercise supplemental jurisdiction over these state and common law claims. *See* 28 U.S.C. § 1367(c)(3) (stating a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction"); *see also Petrossian v. Cole*, 613 F. App'x 109, 112 (3d Cir. 2015) ("Because the Court dismisse[s] all claims over which it ha[s] original jurisdiction, it ha[s] the authority to decline to exercise supplemental jurisdiction . . . over the remaining state-law claims.").

### IV. CONCLUSION

Based on the foregoing, and for other good cause shown, Responding Defendants' Motion to Dismiss is granted and Plaintiff's Fourth Amended Complaint is dismissed with prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

Dated: August 31 , 2020

---

[15] Plaintiff avers that the Court has original jurisdiction over this matter pursuant to 28 U.S.C §§ 1331 and 1343, and has "supplement[al] jurisdiction over Plaintiff's pendent state law claims" pursuant to 28 U.S.C. § 1367. (FAC 4.) Plaintiff also selected "Federal Question" in response to the form complaint's question II.A. which reads, "[w]hat is the basis for federal court jurisdiction? (check all that apply)." (*Id.*) Plaintiff left blank question II.C. which reads, "[i]f the basis for jurisdiction is [d]iversity of [c]itizenship, what is the state of citizenship of each party[.]" (*Id.*)